IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

In Re:                                                          Case No. 1:10 MD 2196

Polyurethane Foam Antitrust Litigation          MEMORANDUM OPINION
                                                                     AND ORDER

This document relates to:
Direct Purchaser Case *Factory Direct, Inc.*     JUDGE JACK ZOUHARY
*v. The Carpenter Co., et al.*
Case No. 1:11 PF 10011

        This matter is before this Court on Defendants[1] Carpenter Co., E.R. Carpenter, L.P., and

Carpenter Holdings, Inc.'s (collectively "Carpenter") three-prong attack on the state law claims

included in Plaintiff Factory Direct, Inc.'s ("Factory Direct") First Amended Complaint (the

"Complaint") (Doc. No. 40).  Carpenter moves to dismiss, for lack of subject-matter jurisdiction

pursuant to Federal Civil Rule 12(b)(1), the civil conspiracy ("Count II"), fraud ("Count III"), and

unjust enrichment claims ("Count IV").  Carpenter also moves to dismiss Count III for failure to state

a claim for relief under Federal Civil Rule 12(b)(6).  Finally, Carpenter seeks judgment on the

pleadings with respect to Count III pursuant to Federal Civil Rule 12(c).

        For the reasons discussed below, Carpenter's Motion to Dismiss the Complaint is granted with

respect to Counts II through IV for failure to properly allege this Court's subject-matter jurisdiction,

and granted with respect to the degree of particularity with which Count III is pled.

---

[1]As employed hereafter, "Defendants" refers to Defendants other than the Carpenter entities.

## THE COMPLAINT

This Court accepts as true for the purpose of this Motion the following Complaint allegations:

Carpenter and various other competitor Defendants participated in a conspiracy to fix prices and allocate customers in the polyurethane foam industry (*see* Doc. No. 39 at ¶¶ 62, 65).  From January 1999 through at least July 2010 (*id.* at ¶ 61), Carpenter joined with other Defendants in coordinating and policing pricing levels through in-person meetings, telephone and e-mail conversations, and exchanges of draft pricing letters (*see id.* at ¶¶ 64–65).  Carpenter and other Defendants falsely justified collusive price increases by reference to claimed increases in polyurethane foam inputs (*see id.* at ¶ 63).

In February 2010, American, Canadian, and European antitrust enforcement authorities began investigating the polyurethane foam price-fixing and customer allocation conspiracy as Defendant Vitafoam initiated its bid for enforcement leniency (*id* at ¶ 66).  For a roughly one-month-long period beginning in May 2010, Vitafoam cooperated with enforcement authorities to record conversations between Vitafoam employees and other conspiracy members detailing cartel operations (*id.* at ¶ 69).  For example, an employee of one conspiracy member bemoaned the prospect of renewed price competition, observing during a telephone conversation with a competitor Defendant that "dropping prices is only going to benefit the customers" (*id.* at ¶ 71).  In July 2010, the U.S. Department of Justice, the Canadian Competition Bureau, and the European Commission ("EC") launched coordinated raids of various conspirators' offices (*id.* at ¶ 66).  EC officials targeted several Carpenter offices during these raids (*id*. at 32 n.2).

Throughout the Complaint period, Factory Direct monitored and compared price increases among Carpenter and other Defendants but failed to detect the existence of the conspiracy and its role

in driving foam product price increases (*id.* at ¶ 57).  Carpenter and other Defendants succeeded in

concealing the antitrust conspiracy through: pretextual explanations supplied to customers;

observance of a gag rule among the conspirators; the modification of business document creation

practices so as to avoid antitrust scrutiny; collusive bidding for polyurethane foam contracts; the use

of code names in business documents when referring to co-conspirators; conspiratorial discussions

during trade association meetings; and the use of public fax machines and other communication

mediums to conceal the identities of the sender and recipient of information related to the conspiracy

(*see id*. at ¶ 58).

## STANDARD OF REVIEW

Federal Civil Rule 8(a)(1) requires "a short and plain statement of the grounds for the court's

jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional

support."  This Court reviews facial attacks to such allegations by accepting as true a complaint's

material allegations, construed in the light most favorable to the non-moving party -- here, Factory

Direct.  *U.S. v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  However, Factory Direct bears the burden

of demonstrating subject-matter jurisdiction exists.  *See Rogers v. Stratton Indus., Inc.*, 798 F.2d 913,

915 (6th Cir. 1986).

This Court scrutinizes Carpenter's Federal Civil Rule 12(b)(6) challenge by first rejecting

those portions of the Complaint that, because they relate only "[t]hreadbare recitals of the elements

of a cause of action, supported by mere conclusory statements," need not be accepted as true.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  This Court then determines whether the remaining,

well-pled factual allegations plausibly give rise to an entitlement to relief, an assessment informed

by "judicial experience and common sense."  *Id.* at 1950.  The same standard applies to Carpenter's

Federal Civil Rule 12(c) Motion.  *See Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir.

2010).  While a plaintiff generally only needs to supply a "a short and plain statement of the claim

showing that the pleader is entitled to relief," Federal Civil Rule 8(a)(2), a plaintiff alleging fraud

must describe "with particularity the circumstances constituting fraud or mistake.  Malice, intent,

knowledge, and other conditions of a person's mind may be alleged generally."  Federal Civil Rule

9(b).

**DISCUSSION**

### Subject-Matter Jurisdiction

Carpenter first argues this Court lacks subject-matter jurisdiction over Factory Direct's state

law claims.  The Complaint bases this Court's subject-matter jurisdiction, with respect to Counts II

through IV, on 28 U.S.C. § 1338(b), which provides federal district courts original jurisdiction in "any

civil action asserting a claim of unfair competition when joined with a substantial and related claim

under the copyright, patent, plant variety protection or trademark laws" (*see* Doc. No. 39 at ¶ 4).

Because Factory Direct does not assert any claim enumerated in Section 1338(b), Carpenter contends

Counts II through IV must be dismissed.

Factory Direct obliquely concedes the Complaint lacks any express allegations establishing

this Court's subject-matter jurisdiction over Factory Direct's state law claims (s*ee* Doc. No. 57 at 3).

But to preserve its state law claims, Factory Direct asserts "the remaining allegations in the . . .

Complaint clearly set forth a proper basis for this Court's exercise of supplemental jurisdiction

pursuant to 28 U.S.C. § 1367(a)" (*id.*), despite the Complaint's failure to ground its jurisdictional

allegations in this Code section.  Factory Direct additionally requests leave to amend the Complaint

4

pursuant to 28 U.S.C. § 1653, should this Court determine dismissal on jurisdictional grounds is necessary (*see id.* at 6).

In reply, Carpenter stresses the fact that Factory Direct already has had two opportunities to properly plead subject-matter jurisdiction with the filing of the original and amended complaints (*see* Doc. No. 58 at 2-3).  According to Carpenter, "fairness now dictates that [Factory Direct's] motion for leave to amend be denied" (*id.* at 3).  Carpenter does not pass on whether this Court could assert supplemental jurisdiction over Factory Direct's state law claims had the Complaint expressly referenced Section 1367(a).

Factory Direct plainly fails to establish this Court's subject-matter jurisdiction on the grounds alleged in the Complaint with respect to Counts II through IV.  Section 1338(b) has no applicability to the alleged price-fixing and customer allocation conspiracy.  Even so, Factory Direct asks this Court to read into the Complaint a proper jurisdictional basis by which Factory Direct's state law claims would be deemed "so related to [Factory Direct's Sherman Act claim] . . . that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  "[C]ourts have often reached beyond the specific statutory sections cited by the complaint to reach a different basis for jurisdiction—albeit one that exists on the face of that complaint," *AmSouth Bank v. Dale*, 386 F.3d 763, 779 (6th Cir. 2004), and Factory Direct urges this Court to follow suit.

This Court declines Factory Direct's invitation, and opts instead to have Factory Direct address the Complaint's jurisdictional flaw.  The statute under which Factory Direct seeks leave to cure the Complaint's jurisdictional allegations aims at "avoid[ing] dismissals on technical grounds." *Miller v. Davis*, 507 F.2d 308, 311(6th Cir. 1974).  By granting Factory Direct's request to amend the

Complaint's simple, though critical, jurisdictional defect, this Court provides Factory Direct yet another opportunity to draft a complaint capable of avoiding dismissal on such a "technical" ground -- Factory Direct's *third* such chance.  In so doing, this Court returns the burden for alleging subject-matter jurisdiction where it ultimately rests: not on this Court, but on the plaintiff that invokes jurisdiction by filing a complaint.

A plaintiff "always is safer if he or she complies with [Federal Civil Rule 8(a)(1)] and alleges the basis for the court's jurisdiction *separately and plainly*."  Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1206 (emphasis added).  Thus, this Court grants both Carpenter's Motion to Dismiss Count II through IV for failure to properly allege this Court's subject-matter jurisdiction and Factory Direct's request for leave to amend the Complaint pursuant to 28 U.S.C. § 1653.

**Fraud**

Carpenter next argues Count III additionally must be dismissed as untimely because the Complaint fails to expressly address the two-year Oklahoma state statute of limitations for fraud or allege fraudulent concealment with requisite particularity.  Further, Carpenter argues that even if pled with requisite particularity, Factory Direct's fraud claim fails as a matter of law for want of "material" statements.  However, because this Court determines Count III must be dismissed on other grounds, this Order does not address Carpenter's additional arguments.

Carpenter asserts that Factory Direct fails to plead Count III with requisite particularity because the Complaint omits any details about the alleged fraudulent representations on which Factory Direct claims it relied.  According to Carpenter, the Complaint's lack of "dates, times, locations, means of communication, context and content of the conversations, or specific subsequent

6

actions taken by [Factory Direct] on the basis of, or in response to, such conversations" leaves Count III insufficiently pled (Doc. No. 40-1 at 9).  Likewise, Factory Direct's failure to attach to the Complaint or otherwise further describe the content of the alleged fraudulent correspondence Carpenter sent Factory Direct, compels the conclusion that the Complaint falls short of the Federal Civil Rule 9(b) pleading standard (*see id.* at 9–10).

Factory Direct argues Carpenter misconceives the rigor with which Federal Civil Rule 9(b) should apply.  While some characteristics of the alleged fraudulent representations must be "considered, 'the ultimate question is whether the complaint puts the defendant on sufficient notice of the misrepresentation, enabling them to respond to the allegations of fraud in an informed manner'" (Doc. No. 57 at 10) (quoting *Pasqualetti v. Kia Motors Am., Inc.*, 663 F. Supp. 2d 586, 599 (N.D. Ohio 2009)).  Factory Direct draws an inverse relationship between the level of particularity with which allegations of fraud must be pled and the complexity of the fraudulent scheme (*see* Doc. No. 57 at 12).  Given the scope of the "nationwide fraudulent scheme occurring between [January] 1999 and July 2010" described in the Complaint, allegations that Factory Direct relied on material and false statements made by named Carpenter employees states a fraud claim (*id.* at 11-12).  Carpenter meets this argument by attempting to distinguish the principle cases on which Factory Direct relies (*see* Doc. No. 58 at 5–6).

"At a minimum, [a plaintiff] must allege the time, place and contents of the misrepresentations upon which they relied" to comply with Federal Civil Rule 9(b)'s particularity pleading requirement. *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008); *see also Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993) (describing this standard as originating in the Sixth Circuit's liberal reading of Federal Civil Rule 9(b)).  A plaintiff that alleges a broad and complex fraudulent scheme need not

recount in a complaint each alleged instance of fraud, but rather can "support more generalized allegations of fraud only to the extent that the . . . examples [included in the complaint] are *representative samples* of the broader class of claims." *U.S. ex. rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 510 (6th Cir. 2007) (emphasis in original).

Contrary to Factory Direct's contention, *Bledsoe* did not sanction a particularity pleading standard that would apply in a less stringent manner to all aspects of a lengthy, complex fraudulent scheme (*see* Doc. No. 57 at 12).  Even when such a complex fraudulent scheme is alleged, a complaint's "representative samples" of statements that induced the plaintiff's reliance still must be pled with particularity.  *See Bledsoe*, 501 F.3d at 510–11 ("[T]he claims *that are pled with specificity* must be characteristic examples that are illustrative of the class of all claims covered by the fraudulent scheme") (emphasis added) (internal quotation marks omitted).

Factory Direct fails to offer in the Complaint any representative sampling of the variety of fraudulent statements that form the basis of Count III, much less provide a sample "pled with specificity."  The Complaint merely identifies two Carpenter employees, who, during an eleven-year period, had "conversations with [unnamed] Factory Direct employees about the pricing of foam" (Doc. No. 39 at ¶ 88). Similarly, "Carpenter's Oklahoma employees and agents" -- again, presumably throughout the eleven-year Complaint period -- sent correspondence to Factory Direct providing the same false explanations for foam product price increases (*see id*. at ¶ 89).  Factory Direct does not include in the Complaint any specific allegations regarding the substantive context of any oral conversation, nor when or where such a conversation occurred.  The Complaint's allegations regarding the correspondence Factory Direct received also fail to disclose the specific senders and recipients of any such letter, or where or when such a letter was received.

8

Without such allegations or relevant Complaint attachments, Count III, as currently pled, does not satisfy Federal Civil Rule 9(b)'s particularity pleading requirement. *See Ford v. New Century Mortg. Corp.*, 797 F. Supp. 2d 862, 874 (N.D. Ohio 2011) (dismissing intentional misrepresentation and fraudulent misrepresentation claims for failure to allege when or where false statements were made). Therefore, Carpenter's Motion to Dismiss Count III for failure to comply with Federal Civil Rule 9(b)'s particularity pleading standard is granted.

### CONCLUSION

For the foregoing reasons, Carpenter's Motion to Dismiss is granted with respect to Counts II through IV for failure to adequately allege this Court's subject-matter jurisdiction over each claim; and granted with respect to Carpenter's contention that Count III is not pled with requisite particularity.

This Court grants Factory Direct leave to amend the Complaint by **January 31, 2012**, if Factory Direct wishes to cure the Complaint's jurisdictional allegations with respect to Counts II and IV.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

January 18, 2012